**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|                          |   |                          |
|--------------------------|---|--------------------------|
| **RAHEEM CLEVELAND,**    | : |                          |
|                          | : | **Civil No. 23-23311 (JKS)** |
| **Petitioner,**          | : |                          |
|                          | : |                          |
| **v.**                   | : | **OPINION**              |
|                          | : |                          |
| **BRUCE DAVIS, *et al.*,**| : |                          |
|                          | : |                          |
| **Respondents.**         | : |                          |
|                          | : |                          |

**SEMPER, District Judge**

This matter comes before the Court on the petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by *pro se* Petitioner Raheem Cleveland ("Petitioner"), a prisoner confined at New Jersey State Prison ("NJSP") in Trenton, New Jersey.  ("Pet." ECF No. 1.)  Petitioner asserts six grounds for relief challenging his trial and conviction, including claims of evidentiary error and ineffective assistance of counsel.  (*Id.* at 7–15.)  Respondents filed an answer opposing habeas relief.  ("Opp'n" ECF No. 6.)  Petitioner filed a traverse in reply.  ("Reply" ECF No. 7.)  Accordingly, the matter is fully briefed and ready for disposition.

The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.  For the reasons discussed below, the Court will deny the petition and will not issue a certificate of appealability.

## I.   __FACTUAL BACKGROUND__[1]

The Court defers to the state courts' factual determinations pursuant to 28 U.S.C. § 2254(e)(1) and adopts the facts as set forth by the New Jersey Superior Court, Appellate Division ("Appellate Division"), in its opinion on direct appeal.

> In the early morning hours of July 5, 2011, [M.R.] and his fiancée, [A.N.], were sitting on the front porch of his mother's house in Newark. From her bedroom, [M.R.]'s mother heard gun shots. When she opened her front door and looked outside, she saw [A.N.] lying on the front porch and bleeding. [A.N.] told [M.R.]'s mother she had been shot. The mother then saw that her son had also been shot, and called 911. Newark Police Officer Kareem Yarborough arrived at the scene at approximately 12:50 a.m., and found the two victims lying on the front porch. Both [M.R.] and [A.N.] were taken to the hospital, where [A.N.] underwent surgery to remove a bullet from her abdomen and [M.R.] died at 3:36 a.m.

> An autopsy revealed that [M.R.] sustained five gunshot wounds— four to the torso and one to the left arm. Two bullets were recovered from his body, near the spine and the right lower back. The autopsy revealed no evidence of stippling, indicating the shots had been fired from over two feet away. Of the two recovered bullets, one was a .40 caliber; the other was not identifiable because it was too damaged. Three .40 caliber shell casings found at the scene were determined to have been fired from the same semiautomatic handgun. The three casings were entered into the Integrated Ballistics Information System (IBIS).

> Several hours after the shooting, Homicide Detectives of the Essex County Prosecutor's Office (ECPO) went to the hospital to speak with [A.N.], but she was still in surgery. On July 8, Detectives Tyrone Crawley and Murod Mohammed went to the hospital and the staff permitted them to speak with [A.N.]. When asked by Detective Crawley who shot her, [A.N.] responded, "Raheem Cleveland shot me and my boyfriend." She further stated, "I have known him for two years," although she later testified at trial she knew him her whole life, and defendant was "like a brother to [her]." The detectives did not record their hospital interview with [A.N.]

---

[1] Initials are used to protect the victims' privacy.

but Detective Crawley did document her responses in his report; defendant became a suspect in the case as a result of the interview. Regarding the hospital interview, Detective Crawley testified that no one threatened, coerced, or physically abused [A.N.]; rather, "[s]he was sort of pleasant. She wasn't upset or anything, [and showed] a little relief."

On July 12, 2011, a few days following her release from the hospital, Detective Crawley and another officer picked up [A.N.] at her friend's house in Newark, after she agreed to give a formal statement. Detective Crawley testified that the interview began ten minutes after [A.N.] entered the interview room of the Homicide Unit, and that he conducted no preliminary interview before turning on the video camera. Detective Crawley explained that he showed [A.N.] only one photograph because she knew defendant. A review of the short video shows that [A.N.] does appear reluctant to sign the photograph and a bit frightened, but no coercion is apparent. In the video-recorded statement, [A.N.] gives the name "Raheem" and proceeds to sign and date the back of the photograph.

A ballistics report issued on July 12, 2011, revealed that the semiautomatic gun used to commit the shootings in the case under review was also used on July 11, in another shooting in Newark. The July 11 shooting occurred a few hours after [M.R.]'s funeral, during which defendant and seven other individuals were shot. Specifically, the three .40 caliber shell casings found at the July 5 shooting matched eight .40 caliber casings found at the July 11 shooting. A GSR test, performed on defendant's hands hours after the July 11 shooting, proved negative. In addition, three .223 caliber shell casings were also recovered at the scene of the July 11 shooting. Detective Crawley opined before the grand jury, based on his observations of the scene and the ballistics match, that someone in the street shot .223 caliber bullets at defendant, who returned fire from the driveway of a residence. Defendant was shot in the leg.

On July 12, following [A.N.]'s interview, Detective Crawley obtained an arrest warrant for defendant and a search warrant for his home. Later that day, Detective Crawley arrested defendant and searched his home; however, the search failed to produce any evidence linking defendant to either shooting.

Nine days after identifying defendant as the shooter, [A.N.] telephoned Detective Crawley and recanted her identification.

3

[A.N.] said "[t]he person that shot me was Gerald Moore," and indicated that she did not want to participate in the investigation anymore. She attempted to withdraw her prior statement, both in letters to the ECPO and in her testimony before the grand jury. At trial, [A.N.] testified that Moore walked up the steps of the porch, gave her a hug, and spoke briefly with her and [M.R.]; as Moore turned to leave, he displayed a gun and said, "It's a set up," and opened fire on them. [A.N.] said she saw Moore run back toward the library and the hospital from where he first appeared.

Detective Crawley then interviewed Moore, who was incarcerated at the time. Further investigation revealed no connection between Moore and the shooting, and Moore was not charged. Nevertheless, at trial, [A.N.] denied that defendant had any motive to kill [M.R.], and disputed the State's allegation that the two had been feuding before the incident. Rather, she claimed she had mentioned Moore several times to the police and also told the grand jury that Moore was the shooter.

[A.N.] further testified she did not speak with any detectives on July 8, and claimed she did not want to give a statement to police on July 12, but was told she would "get locked up" if she refused to cooperate. She testified that when the detectives picked her up that day, she was "under the influence of medicine," which the police took from her and gave to her mother for safekeeping. [A.N.] also claimed the detectives did not allow her to get dressed and took her to the ECPO in her pajamas. She further testified that during the interview, she was shown a photograph of "the wrong guy," and that she signed and dated the photograph and wrote "Raheem" on the back of it because she had been held in the interview room for seven hours and had been coerced by police. She also said she was bleeding from her stomach wound, and was scared and wanted to leave. Moreover, she claimed that the police made ten videotape recordings of her, and that the video played for the jury was the final recording. [A.N.] later contradicted her testimony about a seven-hour interrogation, stating instead that the interview lasted from about 12:00 p.m. to 3:30 p.m.

[A.N.] further testified that a close family friend, George Givens, saw blood on her nightgown when he picked her up following the interview. [A.N.] said she told Givens that the police had interrogated her and made her sign a photograph of defendant, who was not the shooter. The State called Givens as a rebuttal witness,

4

> and he testified no blood was visible on [A.N.]'s clothing when he
> picked her up at 3:30 p.m., she was not bleeding, and she did not
> complain about police abuse or coercion.

*State v. Cleveland*, No. A-2422-13, 2016 WL 1122500, at *1–3 (N.J. Super. Ct. App. Div. March 23, 2016). The Appellate Division recounted that Petitioner was convicted on all counts: first-degree murder, first-degree attempted murder, second-degree unlawful possession of a handgun, and second-degree possession of a handgun for an unlawful purpose. *Id.* at *1.

## II.    PROCEDURAL HISTORY

After the jury returned a guilty verdict, the court sentenced Petitioner on August 6, 2013. (ECF No. 6-3, at 34–36.) The sentence was: (1) forty years with an eighty-five percent parole disqualifier on count one; (2) a consecutive fifteen years with an eighty-five percent parole disqualifier on count two; (3) a concurrent five years with a three-year parole disqualifier on count three; and (4) count four merged into count one. (*Id*. at 34.) The aggregate sentence was fifty-five years, with forty-four years and nine months of parole ineligibility. (*Id.*) Petitioner filed a direct appeal to the Appellate Division, raising the following arguments. (*Id*. at 37–38.)

> Point I: THE COURT ERRED IN ADMITTING THE PRIOR
> STATEMENTS OF [A.N.] INTO EVIDENCE AS THE STATE
> FAILED TO SATISFY THE STANDARDS OF *STATE v. GROSS*,
> 216 N.J. Super. 98 (App. Div. 1987), *aff'd* 121 N.J. 1 (1990). *U.S.
> CONST*., AMENDS. VI, XIV; *N.J. CONST*., ART. 1, PARA. 10.

> Point II: THE TRIAL JUDGE ERRED IN PERMITTING DET.
> CRAWLEY AND INV. SILVESTRI TO TESTIFY AS EXPERTS
> IN GUNPOWDER RESIDUE. *U.S. CONST*., AMENDS. VI, XIV;
> *N.J. CONST*, ART. I, PARA. 10. (Not Raised Below).

> Point III: THE DEFENDANT'S SENTENCE IS EXCESSIVE.

(*Id.* at 11–25.)

Petitioner raised the following additional arguments in his *pro se* supplemental brief:

> Point I: THE APPELLANT'S SIXTH AMENDMENT RIGHT TO A FAIR TRIAL WAS VIOLATED IN VIOLATION OF ART. 1., PARA. 1, 8, 9, 10 OF THE NEW JERSEY STATE CONSTITUTION AND AMENDMENTS V, VI, XIV TO THE UNITED STATES CONSTITUTION RAISED UNDER THE FOLLOWING SUBPOINTS.
>
>> A. When Detective Tyrone Crawley Refused To Answer Questions Concerning Who Gave Him Information That The Victim [A.N.] Came Face To Face And Eye To Eye With The Gunmen It Violated The Appellant's Right To Confrontation And A Fair Trial And Compulsory Process By Allowing The Introduction Of Hearsay Testimony.
>>
>> B. The Appellant Submit[s] That The Trial Court Erred In Allowing Into Evidence The July 8th, 2011 Hearsay Statement Of Ms. [A.N.] In Violation Of His Due Process Under Both The Fifth Amendment To The United States Constitution And Fourteenth Amendment To The New Jersey State Constitution.
>
> Point II: THE APPELLANT WILL ARGUE PROSECUTOR MISCONDUCT WHERE PROSECUTOR ROMESH SUKHDEO'S ROLE IN THE INVESTIGATION OF THE VICTIM [A.N.] AFTER THE SHOOTING ON JULY 12, 2011 VIOLATED THE DEFENDANT'S RIGHT TO DUE PROCESS UNDER THE UNITED STATES CONSTITUTION['S] AMENDMENT V AND XIV AND *N.J.S.A.* 40A:9-22.5(D).

(ECF No. 6-5, at 2.)

The Appellate Division rejected these arguments and affirmed Petitioner's conviction and sentence on March 23, 2016. *Cleveland*, WL 1122500, at *1. Petitioner sought certification from the Supreme Court of New Jersey, raising the same arguments. (ECF No. 6-7.) On June 14, 2016, the Supreme Court summarily denied certification. *State v. Cleveland,* 141 A.3d 297 (N.J. 2016) (unpublished table decision).

6

On September 23, 2016, Petitioner filed a *pro se* petition for post-conviction relief ("PCR"), alleging ineffective assistance of trial and appellate counsel.  (ECF No. 6-10, at 70.)  PCR counsel filed an amended petition on May 18, 2017.  (*Id*. at 71–73.)  The State consented to an evidentiary hearing limited to the reliability of the gunshot residue ("GSR") test.  (14T:3–14 to 4–13.)[2]  The PCR judge held evidentiary hearings on May 1 and 9, 2017, and heard oral argument on July 11, 2017.  (ECF No. 6-11, at 5–6.)  The court denied the PCR petition in a written opinion dated December 1, 2017.  (*Id.* at 3–41.)  Petitioner filed a notice of appeal.  (ECF No. 6-11, at 43–45.)  On appeal, Petitioner raised the following issues:

> POINT I: THE PCR COURT ERRED BY DENYING DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF REGARDING THE ADMISSION OF IMPROPER LAY OPINION, AND BY DENYING DEFENDANT'S PETITION WITH REGARD TO THE HEARSAY STATEMENTS OF [A.N.], WITHOUT AFFORDING HIM AN EVIDENTIARY HEARING.
>
> > A. The Prevailing Legal Principles Regarding Claims for Ineffective Assistance of Counsel, Evidentiary Hearings and Petitions for Post-Conviction Relief.
> >
> > B. Failure to Object to Improper Lay Opinion.
> >
> > C. Failure to Object to [A.N.]'s Hearsay Statement.

*State v. Cleveland*, No. A-3259-17, 2019 WL 2185097, at *5–6 (N.J. Super. Ct. App. Div. May 21, 2019).

On May 21, 2019, the Appellate Division vacated and remanded, holding that "the PCR judge failed to make adequate findings of fact and conclusions of law and also mistakenly exercised his discretion by granting only a limited evidentiary hearing."  *Cleveland*, 2019 WL

---

[2] 14T = Transcript of Post-Conviction Relief Hearing, dated May 1, 2017; ECF No. 6-35.

2185097, at *1.  On remand, the PCR court held evidentiary hearings on September 24, October 22, and November 12, 2020, and February 4, 2021.  (ECF No. 6-15, at 50–51.)

On November 5, 2021, the PCR court issued a written opinion denying relief, finding that Petitioner had not satisfied the standard under *Strickland v. Washington*, 466 U.S. 668 (1984). (ECF No. 6-15, at 46–81.)  Petitioner appealed.  (*Id.* at 83–86.)  On July 24, 2023, the Appellate Division affirmed.  *State v. Cleveland*, No. A-1547-21, 2023 WL 4696818, at *8 (N.J. Super. Ct. App. Div. July 24, 2023).  The Supreme Court of New Jersey denied certification on September 25, 2023.  *State v. Cleveland*, 301 A.3d 1286 (N.J. 2023).

On December 21, 2023, Petitioner filed the instant *pro se* habeas petition.  (Pet., at 1–18.) Respondents filed an answer opposing relief on February 20, 2024.  (Opp'n, at 1–82.)  On March 19, 2024, Petitioner filed a traverse.  (Reply, at 1–51.)

## III.    **LEGAL STANDARD**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), which amended 28 U.S.C. § 2254, a district court "shall entertain an application for writ of habeas corpus [on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254.  Habeas petitioners bear the burden of establishing their entitlement to relief for each claim presented in a petition based upon the record that was before the state court.  *See Harrington v. Richter*, 562 U.S. 86, 103 (2011); *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013).

Moreover, district courts are required to give great deference to the determinations of the state trial and appellate courts.  *Renico v. Lett*, 559 U.S. 766, 772–73 (2010).  Specifically, district

8

courts must defer to the "'last reasoned' decision of the state courts on the petitioner's claims." *Simmons v. Beard*, 590 F.3d 223, 231–32 (3d Cir. 2009). Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Contrary to clearly established Federal law" means the state court applied a rule that contradicted the governing law set forth in United States Supreme Court precedent or that the state court confronted a set of facts that were materially indistinguishable from United States Supreme Court precedent and arrived at a different result than the Supreme Court. *Eley*, 712 F.3d at 846 (citing *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). "Clearly established federal law for purposes of [section 2254(d)(1)] includes only the holdings, as opposed to the dicta of the United States Supreme Court's decisions." *See Woods v. Donald*, 575 U.S. 312, 316 (2015). Even a summary adjudication without explanation by the state court on the merits of a claim is entitled to section 2254(d) deference. *Chadwick v. Janecka*, 312 F.3d 597, 606 (3d Cir. 2002). The state court is not required to cite or even have an awareness of governing Supreme Court precedent "so long as neither the reasoning nor the result of [its] decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *Jamison v. Klem*, 544 F.3d 266, 274–75 (3d Cir. 2008).

9

The Third Circuit has held that the "unreasonable application" of clearly established Supreme Court precedent encompasses three distinct scenarios: "(1) the state court extends Supreme Court precedent to cover a new factual context in which application of the precedent is unreasonable; (2) the state court unreasonably fails to apply a precedent in a factual context that warrants its application; or (3) the state court applies the correct precedent, but unreasonably in light of the facts of the case before it." *Jamison*, 544 F.3d at 274-75 (quoting *Matteo v. Superintendent*, 171 F.3d 877, 887 (3d Cir. 1999).

Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001) (*citing Taylor*, 529 U.S. at 412–13)). An "unreasonable application" of clearly established federal law is an "objectively unreasonable" application of law, not merely an erroneous application. *Eley*, 712 F.3d at 846 (quoting *Renico*, 559 U.S. at 773). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods*, 575 U.S. at 316.

Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Furthermore, "[w]hen a state court arrives at a factual finding based on credibility determinations, the habeas court must determine whether that

credibility determination was unreasonable." *See Keith v. Pennsylvania*, 484 F. App'x 694, 697 (3d Cir. 2012) (citing *Rice v. Collins*, 546 U.S. 333, 339 (2006)).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Haines v. Kerner,* 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. *See Royce v. Hahn,* 151 F.3d 116, 118 (3d Cir.1998); *Lewis v. Attorney General,* 878 F.2d 714, 721–22 (3d Cir.1989); *United States v. Brierley,* 414 F.2d 552, 555 (3d Cir.1969), *cert. denied,* 399 U.S. 912 (1970). Thus, because Petitioner is proceeding as a *pro se* litigant in this matter, the Court will accord his petition the liberal construction intended for *pro se* petitioners.

## IV.    <u>DISCUSSION</u>

Petitioner presented his claims to the Appellate Division and to the Supreme Court of New Jersey on both direct appeal and post-conviction review. As the Supreme Court of New Jersey summarily denied each petition for certification, the Appellate Division's opinions constitute the "last reasoned" decision of the state courts addressing these claims. *See Simmons*, 590 F.3d at 231–32. Accordingly, this Court applies AEDPA deference to the Appellate Division's decisions. *See id*.

### A.  Grounds One, Two, & Three: State Law Claims

Petitioner raises several grounds for relief based on alleged evidentiary errors at trial. In Ground One, Petitioner argues that the trial court erred by admitting prior statements of A.N. into evidence. (Pet., at 7–8.) In Ground Two, Petitioner contends that the trial court improperly permitted Detective Crawley ("Crawley") and Investigator Silvestri ("Silvestri") to testify as

11

experts in gunpowder residue. (*Id*. at 8–10.)  In Ground Three, Petitioner asserts that Detective Crawley refused to answer questions regarding the source of information that A.N. was face-to-face with the gunman.  (*Id*. at 10–11.)

A federal court may entertain a habeas petition only if the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States."  *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (citing *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010)); *see also* 28 U.S.C. § 2254(a).  Claims challenging the admissibility of evidence generally raise questions of state law, which are not cognizable on federal habeas review.  *Keller v. Larkins*, 251 F.3d 408, 416 n.6 (3d Cir. 2001); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  Thus, habeas relief is unavailable for state law evidentiary rulings unless those rulings rise to the level of a due process violation.  *Estelle*, 502 U.S. at 70 ("the Due Process Clause guarantees fundamental elements of fairness in a criminal trial") (quoting *Spencer v. Texas*, 385 U.S. 554, 563–64 (1967)).

Because "[t]he Due Process Clause does not permit the federal courts to engage in a finely-tuned review of the wisdom of state evidentiary rules," *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983), a petitioner must show that an evidentiary error was so pervasive as to deny him a fundamentally fair trial.  *See Keller*, 251 F.3d at 413.  The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly, based on the recognition that, beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation."  *Glenn v. Wynder*, 743 F.3d 402, 407 (3d Cir. 2014) (quoting *Medina v. California*, 505 U.S. 437, 443 (1992)).  In other words, "[i]n order to satisfy due process,

[Petitioner's] trial must have been fair; it need not have been perfect." *Glenn*, 743 F.3d at 407 (citing *United States v. Hasting*, 461 U.S. 499, 508 (1983)). A due process violation arises from an evidentiary ruling only if that ruling was "so arbitrary or prejudicial that it rendered the trial fundamentally unfair." *Scott v. Bartkowski*, No. 11-3365, 2013 WL 4537651, at *9 (D.N.J. Aug. 27, 2013) (citing *Romano v. Oklahoma*, 512 U.S. 1, 12–13 (1994)).

Finally, a federal habeas court does not have authority to review alleged violations of a state constitution. *Reinert v. Larkins*, 379 F.3d 76, 94 n.4 (3d Cir. 2004). To the extent Petitioner relies on the New Jersey Constitution, those claims fail to present cognizable grounds for habeas relief and will be denied. With these principles established, the Court turns to Petitioner's evidentiary claims.

### 1. Ground One: Admission of A.N.'s Prior Statements

In Ground One of the habeas petition, Petitioner argues that he was deprived of a fair trial when the trial court permitted A.N.'s unrecorded statement from July 8, 2011, and her audio/video recorded statement from July 12, 2011, to be admitted as substantive evidence against him at trial. (Pet., at 7; Reply, at 13–15.) Petitioner maintains that A.N.'s statements were unreliable, citing her physical and mental condition, the lack of corroborating evidence, and her later recantation identifying another individual as the shooter. (Reply, at 14.) Respondents counter that the trial court properly admitted A.N.'s prior statements, that the Confrontation Clause was not implicated because A.N. testified and was subject to cross-examination, and that Petitioner raises no cognizable federal claim because the issue turns on state evidence law. (Opp'n, at 55, 58.)

The Appellate Division rejected Petitioner's claim, holding that A.N.'s July 12 recorded statement was admissible under New Jersey Rule of Evidence 803(a)(1)(A) and *State v. Gross*.

13

The state court analyzed the claim as follows:

### A.

N.J.R.E. 803(a)(1) provides the following statements are not excluded by the hearsay rule: (a) Prior statements of witnesses. A statement previously made by a person who is a witness at a trial or hearing, provided it would have been admissible if made by the declarant while testifying and the statement: (1) is inconsistent with the witness' testimony at the trial or hearing and is offered in compliance with Rule 613. However, when the statement is offered by the party calling the witness, it is admissible only if, in addition to the foregoing requirements, it (A) is contained in a sound recording or in a writing made or signed by the witness in circumstances establishing its reliability....

Thus, prior inconsistent statements may be admissible as substantive evidence if they are inconsistent with a witness's testimony and, if offered by the party calling the witness, are contained in a sound recording or in a writing made or signed by the witness. *State v. Mancine*, 124 N.J. 232, 247 (1991); *Gross*, supra, 121 N.J. at 7–9. [A.N.]'s July 12 statement was recorded on a DVD.

When in dispute, a prior inconsistent statement sought to be admitted for substantive purposes under N.J.R.E. 803(a)(1)(A) must be the subject of a preliminary hearing to establish its reliability as a pre-condition to its admissibility. *Gross*, *supra*, 121 N.J. at 16; *State v. Spruell*, 121 N.J. 32, 41–42, 46–47 (1990). In determining the reliability of pre-trial statements, the Supreme Court in *Gross* enumerated fifteen factors to be taken into account:

> (1) the declarant's connection to and interest in the matter reported in the out-of-court statement, (2) the person or persons to whom the statement was given, (3) the place and occasion for giving the statement, (4) whether the declarant was then in custody or otherwise the target of investigation, (5) the physical and mental condition of the declarant at the time, (6) the presence or absence of other persons, (7) whether the declarant incriminated himself or sought to exculpate himself by his statement, (8) the extent to which the writing is in the declarant's hand, (9) the presence or absence, and the nature of, any

14

> interrogation, (10) whether the offered sound
> recording or writing contains the entirety, or only a
> portion of the summary, of the communication, (11)
> the presence or absence of any motive to fabricate,
> (12) the presence or absence of any express or
> implicit pressures, inducement or coercion for
> making the statement, (13) whether the anticipated
> use of the statement was apparent or made known to
> the declarant, (14) the inherent believability or lack
> of believability of the statement, and (15) the
> presence or absence of corroborating evidence.
> [*Gross*, *supra*, 121 N.J. at 10 (quoting *State v. Gross*,
> 216 N.J. Super. 98, 109–10 (App. Div. 1987)).

The trial court should make the determination of the reliability of
the statement, based upon all of the relevant factors, outside the
presence of the jury. *Gross*, *supra*, 216 N.J. Super. at 110. The
proponent of the statement, the State, had the burden of proving its
reliability by a preponderance of the evidence. *Gross*, supra, 121
N.J. at 15. Here, the judge conducted a pre-trial Rule 104 hearing in
order to determine if the State could meet its burden.

The record supports the trial judge's findings that on the video
recording [A.N.] was "[lucid]" and "oriented to place and time."
There were no signs of police pressure or intimidation. She
unequivocally identified the shooter as "Raheem," whom she had
known "for a couple years," as the person who "shot us." She wrote
his name on the back of the photograph, signed and dated it, and was
"positive" about her identification and that her statement was "the
truth." Accordingly, we discern no indication that the trial judge
abused his discretion in admitting the recording. *See State v. Merritt*,
247 N.J. Super. 425, 434 (App. Div.) (applying abuse of discretion
standard to admission of prior inconsistent statements), *certif.
denied*, 126 N.J. 336 (1991).

Defendant points out there was no corroborating evidence produced,
per *Gross* factor fifteen. However, the absence of corroborating
evidence does not preclude admission: "[T]he substantive elements
of a criminal charge may be proven through a prior inconsistent
statement alone, provided that the statement was made under
circumstances supporting its reliability and the defendant has the
opportunity to cross-examine the declarant." *Mancine*, *supra*, 124
N.J. at 256; *see also State v. Bryant*, 217 N.J. Super. 72 (App. Div.)

15

(applying a similar rationale where a prior inconsistent statement, rather than a confession, was sole evidence linking defendant to the crime), *certif. denied*, 108 N.J. 202, *cert. denied*, 484 U.S. 978, 108 S.Ct. 490, 98 L. Ed.2d 488 (1987). Contrary to defendant's assertions, there is no "per se rule barring a conviction based solely on evidence obtained from a prior inconsistent statement." *Mancine*, *supra*, 124 N.J. at 251.

B.

Defendant contends that the initial unrecorded statement in the hospital lacks any indicia of reliability and should have been excluded, especially in light of [A.N.]'s testimony that the interaction never occurred.

Ordinarily, "witnesses may testify that they took certain investigative steps based 'upon information received.' "*State v. Luna*, 193 N.J. 202, 217 (2007) (*quoting State v. Bankston*, 63 N.J. 263, 268–69 (1973)). However, "they cannot repeat specific details about a crime relayed to them by ... another person without running afoul of the hearsay rule." *Ibid.*; *see also State v. Vandeweaghe*, 177 N.J. 229, 240–41 (2003) (*quoting State v. Vandeweaghe*, 351 N.J. Super. 467, 484 (App. Div. 2002)) ("[A] police officer may, without violating either the hearsay rule or defendant's right to confrontation, explain the reasons he apprehended a suspect or went to the scene of a crime by stating he did so 'upon information received.'"). The limited exception occurs where a defendant "opens the door by flagrantly and falsely suggesting that a police officer acted arbitrarily or with ill motive [.] ... [In that case] the officer might be permitted to dispel that false impression, despite the invited prejudice the defendant would suffer." *State v. Branch*, 182 N.J. 338, 352 (2005).

Given [A.N.]'s serious accusation that the Prosecutor's Office forced her into identifying defendant at the July 12 interview, we find no error in the State's rebuttal testimony that the July 12 interview focused on defendant, not because of coercion, but because [A.N.] had previously given them defendant's name on July 8, at the hospital. Moreover, defendant's right to confront and cross-examine [A.N.] was not violated because she testified at trial, avoiding the fears associated with a "faceless accuser." *See Branch*, *supra*, 182 N.J. at 348 ("Both the hearsay rule and the right of confrontation protect a defendant from the incriminating statements

> of a faceless accuser who remains in the shadows and avoids the light of court."). Further, the record reveals that the trial judge's jury instructions were clear that the jury should carefully evaluate [A.N.]'s prior statements before convicting defendant solely based on her recanted out-of-court statements.

*Cleveland*, 2016 WL 1122500, at *4–6.

As stated above, federal habeas relief is unavailable for state law evidentiary rulings unless those rulings rise to the level of a due process violation. *See Estelle*, 502 U.S. at 70. Because "[t]he Due Process Clause does not permit the federal courts to engage in a finely-tuned review of the wisdom of state evidentiary rules," *Lonberger*, 459 U.S. at 438 n.6, a petitioner must show that an evidentiary error was so pervasive as to deny him a fundamentally fair trial. *See Keller*, 251 F.3d at 413. A habeas petitioner may therefore raise a habeas claim based on a state law evidentiary ruling only where he can show that the admission of the evidence at issue denied him Due Process under the Fourteenth Amendment by depriving him of the "fundamental elements of fairness in [his] criminal trial." *Glenn*, 743 F.3d at 407 (3d Cir. 2014) (quoting *Riggins v. Nevada*, 504 U.S. 127, 149 (1992) (Thomas, J. dissenting)).

The Sixth Amendment, applicable to the States via the Fourteenth Amendment, guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309 (2009) (citing *Pointer v. Texas*, 380 U.S. 400, 403 (1965)); *Davis v. Alaska*, 415 U.S. 308, 315 (1974). "The Confrontation Clause provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination." *Preston v. Superintendent Graterford SCI*, 902 F.3d 365, 380 (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987)). The Supreme Court has held that the Confrontation Clause is not violated by admitting a declarant's out-of-court

17

statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination. *California v. Green*, 399 U.S. 149, 158 (1970); *see also Giles v. California*, 554 U.S. 353, 358 (2008) ("The [Sixth] Amendment contemplates that a witness who makes testimonial statements admitted against a defendant will ordinarily be present at trial for cross-examination, and that if the witness is unavailable, his prior testimony will be introduced only if the defendant had a prior opportunity to cross-examine him.").

Finally, under 28 U.S.C. § 2254(d), district courts must defer to the state court's adjudication on the merits unless it was contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence presented.

The trial court admitted A.N.'s July 12 statement after conducting a *Gross* hearing to evaluate its reliability.[3]  (2T:3–23 to 6–8.)  The court reviewed the video recording and made findings that A.N. was lucid, oriented to place and time, and unambiguous in identifying Petitioner as the shooter.  (*Id.* at 4–16 to 21; 5–19 to 6–1.)  The court also noted that this was not a stranger-to-stranger crime, as A.N. stated she had known Petitioner "for a couple years," and was familiar with him.  (*Id.* at  5–19 to 23.)  The trial judge determined that there was no police pressure or intimidation and A.N. was not antagonistic in any way.  (*Id.* at  5–3 to 13.)

The AEDPA requires federal courts collaterally reviewing state proceedings to afford considerable deference to state courts' legal and factual determinations.  *Lambert v. Blackwell*, 387 F.3d 210, 234 (3d Cir. 2004).  "[A] determination of a factual issue made by a State court shall

---

[3] 2T = Transcript of Trial, dated April 16, 2013; ECF No. 6-23.

be presumed to be correct" unless the petitioner rebuts "the presumption of correctness by clear and convincing evidence." *Id.* (quoting 28 U.S.C. § 2254(e)(1)). In the habeas context, the Supreme Court has interpreted section 2254(d)(2) to mean that "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Lambert*, 387 F.3d at 234.

Here, the Appellate Division concluded that the trial judge did not abuse his discretion in admitting the recording, which reflected that A.N. was lucid and "oriented to place and time." *Cleveland*, 2016 WL 1122500, at *5. The court also noted no signs of police pressure or intimidation. *Id.* This Court independently reviewed the recording. (*See* Ex. 36.) The interview lasted less than five minutes. A.N. was lucid and oriented to time and place. Although she may have been experiencing slight discomfort, she did not appear to be in distress or physical pain. Two beverages were on the table before her. A.N. confirmed she was not under the influence of drugs or alcohol. She responded clearly to all questions and unequivocally identified Petitioner as the shooter. The statement was not the product of pressure, intimidation, or coercion. A.N. affirmed that her statement was truthful.

The Appellate Division's determination was not "based on an unreasonable determination of the facts in light of the evidence presented," 28 U.S.C. § 2254(d)(2), because the video itself corroborated the trial court's finding that A.N. was lucid and unequivocal. Petitioner's later arguments—pointing to A.N.'s recantation or the absence of corroborating evidence—do not undermine the admissibility of the statement under federal law. Under clearly established federal law, a prior inconsistent statement may be admitted not only for impeachment but also as

19

substantive evidence, provided the declarant testifies at trial and is subject to cross-examination. *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004) ("[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.") (citing *Green*, 399 U.S. at 162); *see also United States v. Gerard*, 507 F. App'x 218, 221 (3d Cir. 2012) (the admissibility of a witness's prior testimony as substantive evidence depends on whether it is inconsistent with the witness's trial testimony, as provided in Fed. R. Evid. 801(d)(1)(A)); *United States ex rel. Thomas v. Cuyler*, 548 F.2d 460, 463 (3d Cir. 1977) ("[A] witness whose prior statement is to be used must not only be produced but must also be sworn and made available for cross-examination."); Fed. R. Evid. 801(d)(1)(A) (a witness's prior statement is not considered hearsay and is admissible as substantive evidence where the declarant testifies and is subject to cross-examination about a prior statement, and the statement is inconsistent with the declarant's testimony and was given under the penalty of perjury at a trial, hearing, or other proceeding or in a deposition). Indeed, because A.N. testified at trial and was subject to cross-examination, there was no Confrontation Clause violation. *See Green*, 399 U.S. at 162.

Accordingly, the trial court's ruling on the admissibility of A.N.'s statements under *Gross* was not an "unreasonable determination" of the facts. 28 U.S.C. § 2254(d)(2). The admission of A.N.'s prior statements did not render Petitioner's trial fundamentally unfair. The Appellate Division's decision upholding the admission of A.N.'s statements was neither contrary to, nor an unreasonable application of, clearly established federal law, and it was not based on an unreasonable determination of the facts. Habeas relief on Ground One is therefore denied.

## 2. Ground Two: Detective Crawley and Investigator Silvestri's Gunpowder Residue Testimony

In Ground Two Petitioner argues that the trial judge erred by permitting Detective Crawley and Investigator Silvestri to testify as experts in gunpowder residue. (Pet., at 8–10.) Respondents contend that the claim is procedurally barred because the Appellate Division disposed of it under the state-law invited error doctrine. (Opp'n, at 62.) Respondents further argue that Petitioner cannot establish that the alleged error had a substantial and injurious effect on the verdict. (*Id*. at 63.)

The Appellate Division considered and ultimately rejected Petitioner's claims in light of controlling law. *See Cleveland*, 2016 WL 1122500, at *6–7. The court concluded that defendant invited any potential error, and analyzed the claim as follows:

> Defense counsel first raised the subject of the July 11 shooting, and the results of the GSR test of defendant's hands, on cross-examination of Detective Crawley to support his theory that someone else had shot [M.R.] and [A.N.]. Detective Crawley testified that the ECPO had administered the GSR test to defendant at the hospital, and it yielded negative results. On redirect, Detective Crawley opined that the test was unreliable, but on re-cross he admitted that the ECPO routinely used the test. Defense counsel did not object to the question about reliability. Moreover, defense counsel called Investigator Silvestri to testify about the ballistics recovered from the July 11 shooting. On cross-examination, the prosecutor elicited Investigator Silvestri's personal belief that the test was unreliable, and that he did not personally use it. Defense counsel again did not object to the question about reliability.
>
> "[A] defendant cannot beseech and request the trial court to take a certain course of action, and upon adoption by the court, take his chance on the outcome of the trial, and if unfavorable, then condemn the very procedure he sought ... claiming it to be error and prejudicial." *N.J. Div. of Youth & Family Servs. v. M.C. III*, 201 N.J. 328, 340 (2010) (citation omitted). "The doctrine of invited error does not permit a defendant to pursue a strategy ... and then when

21

the strategy does not work out as planned, cry foul and win a new trial." *State v. Williams*, 219 N.J. 89, 101 (2014), cert. denied, ——— U.S. ———, 135 S.Ct. 1537, 191 L. Ed.2d 565 (2015). "Under that settled principle of law, trial errors that were induced, encouraged or acquiesced in or consented to by defense counsel ordinarily are not a basis for reversal on appeal[.]" *State v. A.R.*, 213 N.J. 542, 561 (2013) (internal quotation marks omitted).

Here, the record reveals that defense counsel introduced the topic of the July 11 shooting and the negative test results of defendant's GSR test because it was the cornerstone of defendant's theory of that case. That is, defense counsel wanted the jury to know about the negative results of the test because it supported the defense theory that defendant never possessed the handgun and that someone else shot [M.R.] and [A.N.]. This is presumably why defense counsel did not object to the officers' qualifications to render the opinions, or to their testimony about the test's reliability. If, as defendant contends, "[t]he real issue in this matter is the lack of objection from the trial attorney," this issue is better suited for a PCR petition. *See State v. Taccetta*, 200 N.J. 183, 192–93 (2009).

*Cleveland*, 2016 WL 1122500, at *6–7.

Federal habeas review does not extend to a state court's application of its own evidence rules unless the ruling violated clearly established federal law or rendered the trial fundamentally unfair. *See Estelle*, 502 U.S. 62, 67–68 (1991). Federal habeas relief is barred where the state court denies a claim on an independent and adequate state procedural ground. *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991).

Even when a constitutional error is established, habeas relief is unavailable unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

Here, the Appellate Division denied Petitioner's claim based on New Jersey's invited error doctrine. *See Cleveland*, 2016 WL 1122500, at *7. "Federal habeas courts reviewing convictions

from state courts will not consider claims that a state court refused to hear based on an adequate and independent state procedural ground." *Davila v. Davis*, 582 U.S. 521, 524 (2017). The invited error doctrine constitutes an independent and adequate state procedural ground that bars federal habeas review. *See Coleman*, 501 U.S. at 729–30. Petitioner has not attempted to show cause and prejudice to excuse the default, nor has he asserted that failure to consider his claim will result in a fundamental miscarriage of justice. Accordingly, the claim is procedurally barred.

Even if the Court were to reach the merits, Petitioner would not be entitled to relief. The defense deliberately elicited testimony about the GSR test to support the theory that Petitioner was not the shooter. *See Cleveland*, 2016 WL 1122500, at *7. The state court reasonably concluded that counsel's decision not to object was strategic and integral to that theory. *Id.* at *6–7. Moreover, the admission of testimony questioning the reliability of the GSR test did not render the trial fundamentally unfair, particularly where the testimony underscored that Petitioner's test results were negative.

Finally, Petitioner cannot demonstrate prejudice. The jury heard that Petitioner's GSR test results were negative and that both officers considered the test unreliable. In these circumstances, any alleged error in permitting them to testify as experts had no substantial and injurious effect on the verdict.

Ground Two is procedurally barred by the invited error doctrine. In any event, Petitioner has not shown that the Appellate Division's determination resulted in a violation of clearly established federal law or had a substantial and injurious effect on the verdict. Relief on Ground Two is therefore denied.

23

### 3.   Ground Three: Detective Crawley's Testimony

In Ground Three Petitioner alleges a violation of his right to a fair trial, confrontation, and compulsory process based on Detective Crawley's "refusal" to answer questions about who gave him information that A.N. came face-to-face and eye-to-eye with the gunman.  (Pet., at 10–11; Reply, at 17–19.)  Respondents counter that Petitioner mischaracterizes the testimony.  They argue that Crawley did not testify that an unknown person provided him with substantive information about the shooter.  (Opp'n, at 64.)  Instead, Respondents maintain, the testimony was admitted for the limited purpose of explaining why Crawley went to the hospital to interview A.N.  (*Id*. at 66.)  Respondents also note that even if the statement were offered for its truth, Detective Handcock testified at trial and was available for cross-examination about his conversations with Crawley.  (*Id*.)

The Appellate Division summarily rejected Petitioner's claim, concluding that his arguments lacked sufficient merit to warrant discussion in a written opinion.  *Cleveland*, 2016 WL 1122500, at *8.  Section 2254(d) does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits.  *See Harrington*, 562 U.S. at 98–100.  Where a state court's decision is unaccompanied by an explanation, the Petitioner still bears the burden of showing there was no reasonable basis for the state court to deny relief.  *Id*. at 102.

As previously stated, the Confrontation Clause bars the admission of testimonial hearsay unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination.  *Crawford*, 541 U.S. at 68.  However, the Confrontation Clause is not implicated where a statement is not offered for the truth of the matter asserted.  *Tennessee v. Street*, 471 U.S. 409, 414 (1985).  Nor does the Clause apply where the declarant testifies at trial and is subject to cross-examination.

24

*Green*, 399 U.S. at 162.

The record supports the state courts' rejection of this claim.   On cross-examination, Detective Crawley testified to explain the course of his investigation.[4]

> Q: It's Det. Handcock that gave you the impression to talk to [A.N.] regarding this investigation; Is that correct?
>
> A: No.
>
> Q: Somebody else gave you that impression that [A.N.] may have had a face to face with this person that shot him?
>
> A: Handcock gave me a brief synopsis of what had occured.
>
> Q: What was that brief scenario that Handcock gave you?
>
> A: He told me what occurred.
>
> Q: What is it specifically Det. Handcock told you had occured?
>
> A: That a guy walked   up on the steps, according to whoever he spoke to.
>
> Q: Do you know who he spoke to?
>
> A: No, I do not.
>
> Q: Did you inquire of him as to where he got that information from?
>
> A: Yes, but he wasn't able to provide me with that information.
>
> Q: Did you say, "Det. Handcock, what happened? What are we doing here?"   You're investigating a murder and did you say, "Someone gave you information that a guy walked up and shot these two individuals and you didn't record that down anywhere?"
>
> A: No.
>
> Q: Did you write it down?

---

[4] 3T = Transcript of Trial, dated April 17, 2013; ECF No. 6-24.

A: No.

(3T:137–6 to 138–10.)

Police officers are permitted to explain the background context of their investigation without running afoul of the Confrontation Clause and may relate limited details of information received when necessary to place their actions in context.  *United States v. Price*, 458 F.3d 202, 210 (3d Cir. 2006); *see also Street*, 471 U.S. at 414 (Confrontation Clause not implicated when out-of-court statement admitted for non-hearsay purpose).

Even assuming the testimony carried hearsay value, Petitioner's claim still fails.  The declarant, Detective Handcock, testified at trial and was available for cross-examination.  *See Green*, 399 U.S. at 162.  Petitioner therefore cannot establish a violation of his confrontation rights. Nor has Petitioner shown that the testimony deprived him of a fair trial or compulsory process.

The Appellate Division's determination is not contrary to clearly established federal law. No Confrontation Clause violation occurred, and the testimony did not render the trial fundamentally unfair.  Relief on Ground Three is therefore denied.

### B.  Grounds Four, Five, & Six: Ineffective Assistance of Counsel

In Grounds Four through Six, Petitioner alleges violations of the Sixth Amendment right to effective assistance of trial counsel.  (Pet., at 11–18.)  In Ground Four (a), Petitioner claims that counsel was ineffective for failing to object when A.N. referenced a non-testifying eyewitness who had identified Petitioner as the shooter before A.N.'s own (later recanted) identification.  (*Id.* at 11.)  Petitioner further argues that counsel failed to move to strike or request a curative instruction when those hearsay references were included in the readback of A.N.'s testimony during jury deliberations.  (*Id.*)  In Ground Four (b), Petitioner asserts that counsel mishandled the GSR

evidence after two State witnesses testified that the test was unreliable. (*Id.*) In Ground Five, Petitioner contends that counsel was ineffective for permitting A.N. to testify that a non-testifying witness identified Petitioner as the shooter. (*Id.* at 12–14.) Finally, in Ground Six, Petitioner argues that counsel was ineffective for failing to object, move to strike, seek a curative instruction, or call a defense expert regarding the reliability of the GSR test. (*Id.* at 14–16.) The Court addresses each claim in turn.

The United States Constitution guarantees the right of assistance of counsel to every person accused of a crime. U.S. Const. amend. VI. "[T]he Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial." *Strickland*, 466 U.S. at 684. "The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment, including the Counsel Clause:

> 'In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.'"

*Id.* at 684–85. To support an ineffective assistance of counsel claim under *Strickland*, a petitioner must first show counsel's performance was deficient. *Id.* at 687. "This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d

Cir. 2005).  A petitioner asserting ineffective assistance must show counsel's representation "fell below an objective standard of reasonableness" under the circumstances.  *Id.*  The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel.  *Id.*  In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.

A petitioner also must affirmatively demonstrate that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial ... whose result is reliable."  *Strickland*, 466 U.S. at 687, 692–93; *Shedrick*, 493 F.3d at 299.  "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."  *Strickland*, 466 U.S. at 693.  The petitioner must demonstrate "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*. at 694; *see also Shedrick*, 493 F.3d at 299.  "Because failure to satisfy either [*Strickland*] prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible," courts should address the prejudice prong first where it is dispositive of a petitioner's claims.  *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002) (quoting *Strickland*, 466 U.S. at 697–98).

Errors that undermine confidence in the fundamental fairness of the state adjudication, including deprivation of the right to the effective assistance of counsel, justify the issuance of the federal writ of habeas corpus.  *Taylor*, 529 U.S. at 375.  Federal habeas courts must guard against

the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). *Harrington*, 562 U.S. at 105.   When Section 2254(d) applies, "the question is not whether counsel's actions were reasonable" rather the question is "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*   More specifically, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Id.* at 101.   "This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Id.*   "Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court." *Id.*

### 1.   Grounds Four (a) & Five: Testimony Regarding Non-Testifying Witness

In Ground Four (a), Petitioner argues that trial counsel rendered ineffective assistance by failing to object to A.N.'s testimony referencing a non-testifying eyewitnesses who allegedly identified Petitioner as the shooter.  (Pet., at 11; Reply, at 19–27.)  Petitioner further contends that counsel should have moved to strike or requested a curative instruction to prevent those statements from being included in the readback of A.N.'s testimony during jury deliberations.  (Pet., at 11.) Relatedly, in Ground Five, Petitioner asserts that trial counsel was ineffective for failing to prevent A.N. from testifying that a non-testifying witness identified Petitioner as the shooter.  (Pet., at 12–14.)  Respondents counter that Petitioner has not shown that the state court's ruling was contrary to, or an unreasonable application of, the standard established in *Strickland*.  (Opp'n, at 74.)

At trial, A.N. testified on direct examination that another witness had already identified Petitioner before she did, despite efforts to redirect her testimony.  Defense counsel objected to the form of the testimony but did not move to strike or seek a curative instruction.  (2T:75–12 to

29

76–25.)  For example, A.N. stated:

> Q: Now you know that you have identified the defendant here as the shooter in the case, correct?
>
> A: Yeah, because someone else -- when I came, when you brung me down to the statement  he already had his picture.   You also had someone else questioned before me because if you going to ask me you supposed to have a line up of people, not just one picture.  So the person that you all took down there to question picked him out first so when I --
>
> MR. KINSALE: Objection.
>
> Q: There's an objection.
>
> MR. KINSALE: I ask the Prosecutor ask a specific question and the Court direct the witness to give a specific answer instead of this stream of consciousness.
>
> MR. SUKHDEO: I didn't tell her to say all that.
>
> A: I am saying.
>
> THE COURT: It came out of her mouth on her own volition.
>
> Q: Just try to--I am going ask you specific questions.  I am going to ask you to try to answer them in short responses so we won't get any objections from any of the lawyers.   Okay?
>
> You know Raheem Cleveland your whole life?
>
> A: Yes.
>
> Q: It wouldn't be a problem for you to identify him, right? He's someone you know?
>
> A: Yeah, absolutely right.
>
> Q: So if you saw six photographs as opposed to one, you --
>
> A: But someone -- you already had someone there.   When the officer came and got me he said I want you to keep it real with me. You absolutely right.   When we got into the table room he flipped the picture over.   He had Raheem over there and I told him that it

wasn't him numerous times.   How many tapes you have of me besides

(2T:75–12 to 76–25.)

. . .

Q:   There's supposed to be a line up of people? You know what the police procedure is in photographic identifications?

A:  It's supposed to be a line up.

Q:  Who told you that?

A:  So if you had this picture

Q:  Who told you?

A:  Who else told you it was him besides me?   Also there was one photo.

MR. SUKHDEO: I am going to object.

(2T:82–22 to 83–1.)

Petitioner raised these claims in his application for post-conviction relief.  (ECF No. 6-11, at 24–28.)  After the first PCR hearing, the Appellate Division determined that the PCR judge mistakenly exercised his discretion by granting defendant only a limited evidentiary hearing. *Cleveland*, 2019 WL 2185097, at *6.  The court reversed and remanded for the PCR judge to conduct a full evidentiary hearing, review all of Petitioner's claims and render a new decision. *Id.* at *8.

On remand, the PCR court conducted a full hearing and denied relief.  (ECF No. 6-11, at 3–42.)  Petitioner appealed.  (*Id.* at 43–45.)  The Appellate Division affirmed the denial of relief, concluding that counsel's performance reflected a reasonable trial strategy. *Cleveland*, 2023 WL 4696818, at *7.  While affirming for substantially the same reasons expressed by the PCR court,

the Appellate Division added the following comments for amplification:

> Here, we are satisfied the PCR judge's detailed findings with respect to defense counsel's trial strategy were all supported by the record. First, the record supports the judge's determination trial counsel was not deficient for failing to object to, move to strike, or seek a curative instruction with respect to A.N.'s testimony that a third party identified defendant prior to her own identification. As detailed above, the State's case relied primarily on A.N.'s initial statement in which she identified defendant as the shooter, and the prosecutor stressed in closing that A.N.'s initial statement was credible. Contrariwise, trial counsel pursued a strategy that relied upon the jury accepting A.N.'s recanted testimony at trial and that the police coerced her initial identification. Pursuant to that strategy, trial counsel chose not to undermine A.N.'s trial testimony, by moving to strike portions of it, or highlight for the jury the unfavorable portion of that testimony. Based on the trial and record before the PCR court, we are satisfied defendant has not shown counsel's trial strategy was unsound.
>
> Similarly, we discern no reason to disagree with the PCR judge's conclusion trial counsel's asserted failures with respect to A.N.'s testimony did not materially impact the trial result in light of the fact the jury clearly chose not to believe A.N.'s trial testimony. As observed by the PCR judge, A.N.'s fleeting remarks were part of her narrative that the police coerced her initial identification, which the jury clearly did not accept.

*Cleveland*, 2023 WL 4696818, at *7–8.

This determination was not contrary to, nor an unreasonable application of, *Strickland*. To prevail, Petitioner must demonstrate both that counsel's performance was deficient and he was prejudiced as a result. *Strickland*, 466 U.S. at 694. Courts apply a "highly deferential" review of counsel's performance, presuming that counsel acted within the range of reasonable professional assistance. *Id*. at 689. The Supreme Court has emphasized that "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id*. at 690. *See also Dunn v. Reeves*, 594 U.S. 731, 739 (2021) (Strategic decisions are entitled to

a "strong presumption" of reasonableness.); *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (federal courts must apply a "doubly deferential" standard of review that gives the state court and the defense attorney the benefit of the doubt in ineffective assistance of counsel cases). "Counsel is presumed to be competent and the defendant has the burden of proving otherwise." *Werts v. Vaughn*, 228 F.3d 178, 205 (3d Cir. 2000).

Petitioner has not overcome that presumption. The deficient performance prong of *Strickland* requires a showing "that counsel's representation fell below an objective standard of reasonableness." *Thomas v. Varner*, 428 F.3d 491, 499 (3d Cir. 2005) (quoting *Strickland*, 466 U.S. at 688)). The record supports the Appellate Division's conclusion that counsel pursued a coherent trial strategy of not undermining A.N.'s trial testimony, which depended on the jury crediting A.N.'s recantation of the initial statement in which she identified Petitioner as the shooter. *See Cleveland*, 2023 WL 4696818, at *7. Nor can Petitioner establish prejudice. *Strickland* prejudice requires a showing that there would be a reasonable probability that, but for counsel's unprofessional errors the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. As the Appellate Division noted, the jury plainly rejected A.N.'s recantation, and there is no reasonable probability that further objections or instructions regarding her fleeting remarks would have altered the verdict.

Accordingly, Grounds Four (a) and Five fail to establish ineffective assistance under *Strickland*. The Appellate Division's decision was not contrary to, nor an unreasonable application of, clearly established federal law. Habeas relief on these claims will therefore be denied.

### 2.  Grounds Four (b) & Six: Testimony Regarding the GSR

In Grounds Four (b) and Six, Petitioner challenges trial counsel's handling of the GSR evidence.  (Pet., at 11, 14–15.)  He argues that counsel rendered ineffective assistance by failing to object to the introduction of the GSR evidence, move to strike it, or seek a curative instruction, despite two of the State's own witnesses opining that the test was unreliable. (*Id*.)  Petitioner further argues that counsel compounded this error by declining to retain a defense expert on the reliability of the GSR test, thereby prejudicing the defense.  (Reply, at 22.)

At trial, Detective Crawley testified on cross-examination that, during his Grand Jury appearance, he advanced the theory that Petitioner returned fire after being shot on July 11.  *Cleveland*, 2019 WL 2185097, at *3.  In support of this theory, Crawley referenced ballistic evidence linking .40 caliber shell cases recovered from the July 11 shooting with those recovered at the July 5 homicide of M.R., emphasizing "it was a match to the same gun that was used to kill [M.R.]."  *Id.*  Defense counsel did not object when Crawley stated that the GSR is "just an unreliable test," but elicited on cross-examination that the prosecutor's office nonetheless continued to use it.  *Id.*  Later, Investigator Silvestri testified for the defense regarding the July 11 crime scene and, on cross-examination, and without objection, agreed that the GSR test is "highly" inaccurate and stated that he does not use it personally.  *Id.*  After deliberating for approximately ninety minutes, the jury requested to review the testimony of A.N. and Detective Crawley, and the trial judge directed the court reporter to read their testimony in full.  *Id.*

Petitioner raised the GSR claims in his application for post-conviction relief.  (ECF No. 6-11, at 17–24.)  Following remand, the Appellate Division affirmed the denial of relief, concluding that the PCR judge's findings were supported by the record.  *Cleveland*, 2023 WL 4696818, at *8.

34

The Appellate Division analyzed the claim as follows:

> The PCR judge's findings as to counsel's decision-making with respect to the GSR test evidence are similarly supported by the record. On this point, the PCR court found defendant's trial counsel's failure to object to the detectives' reliability testimony was a reasonable strategic decision because counsel "essentially felt he did not need to object as the State was making itself look bad, as it defie[d] common sense that someone would administer a test they felt unreliable." As noted, Detective Crawley's testimony the Essex County Prosecutor's Office regularly used the Blue View test undermined the detectives' opinions the GSR test was unreliable. Counsel's decision not to retain an expert similarly did not run afoul of *Strickland*, as counsel was reasonably concerned about testimonial risks related to cross-examination of any expert given the test results were favorable to defendant and the State likely would have cross-examined any expert about the test's deficiencies.

*Cleveland*, 2023 WL 4696818, at *8.

The Appellate Division's determination was not contrary to, nor an unreasonable application of, *Strickland*.   As stated above, Petitioner must demonstrate both deficient performance and prejudice.  *Strickland*, 466 U.S. at 687.  Moreover, strategic decisions, even if unsuccessful, are "virtually unchallengeable."  *Id.* at 690.

Here, the record supports the Appellate Division's finding that counsel deliberately chose not to object, reasoning that the State's reliance on a supposedly "unreliable" test undermined its own case, and that hiring an expert posed unnecessary risks given that the test results themselves favored Petitioner.  *See Cleveland*, 2023 WL 4696818, at *8.  Nor can Petitioner establish prejudice.  He has not shown a reasonable probability that additional objections, curative instructions, or expert testimony would have altered the outcome. The jury heard testimony from multiple witnesses acknowledging the test's weaknesses, and the results themselves did not incriminate Petitioner.  In these circumstances, the Appellate Division reasonably concluded that

counsel's handling of the GSR evidence neither fell below constitutional standards nor affected the outcome of the trial.

Accordingly, Petitioner fails to demonstrate that the state court's adjudication of Grounds Four (b) and Six was contrary to, or involved an unreasonable application of, clearly established federal law.  Habeas relief on those grounds will therefore be denied.

## III.    CERTIFICATE OF APPEALABILITY

This Court must next determine whether a certificate of appealability should issue. *See* Third Circuit Local Appellate Rule 22.2.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. 28 U.S.C. § 2253(c).

For the reasons discussed above, this Court's review of the claims advanced by Petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Therefore, the Court declines to issue a certificate of appealability. 28 U.S.C. § 2254(b)(1)(A).

## IV.    <u>**CONCLUSION**</u>

For the reasons discussed above, the Court will deny habeas relief and will not issue a certificate of appealability.  An appropriate Order follows.

Date: October 22, 2025

        _/s/ Jamel K. Semper_____
**HON. JAMEL K. SEMPER**
**UNITED STATES DISTRICT JUDGE**

37